No. 2--05--0793
filed 05/17/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| EUGENE A. COSTA, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--CH--406 |
| | ) | |
| CATHERINE A. OLIVEN, | ) | Honorable |
| | ) | Edward R. Duncan, Jr., |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Eugene A. Costa, appeals from an order of the circuit court of Du Page County dismissing counts I and II of his three-count complaint against defendant, Catherine A. Oliven. Plaintiff contends that the trial court erroneously relied on Hewitt v. Hewitt, 77 Ill. 2d 49 (1979), in dismissing his complaint. We affirm.

On March 21, 2005, plaintiff filed a three-count complaint against defendant. According to the complaint, plaintiff and defendant lived together, unmarried, for 24 years. The parties had a "quasi-marital" relationship, with "all the indicia of a marital type relationship, including love, trust, mutual responsibilities and intimacy." On May 5, 1992, a child, Elsa, was born to the parties. Following Elsa's birth, plaintiff "assume[d] the role of stay-at-home dad, nurturing, and home-schooling Elsa, and routinely performing all of the usual activities associated with maintaining an efficient household." Plaintiff "contributed the foregoing services to the family unit in order to

enable [defendant] to work full-time pursuing various entrepreneurial endeavors such as the creation of her own corporation." "[Defendant] wielded much influence and superior bargaining power over [plaintiff] *** and successfully obtained title to almost every possession the couple acquired through joint labor and efforts, and every significant asset the couple shared." On December 3, 2004, defendant demanded that plaintiff vacate their home. Count I seeks the imposition of a constructive trust upon real, personal, and intellectual property owned by defendant. Count II seeks an accounting of all income and assets in defendant's possession and an award of punitive damages in the amount of $250,000. Count III seeks payment of unpaid wages and final compensation under the Wage Payment and Collection Act (820 ILCS 115/5 et seq. (West 2004)) for services rendered to defendant while plaintiff was defendant's employee.[1]

On April 25, 2005, defendant moved to dismiss counts I and II under section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2004)). Defendant argued that plaintiff's claims were unenforceable based on section 214 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/214 (West 2004)), which prohibits common-law marriage, and based on Hewitt. Following a hearing, the trial court granted defendant's motion and found "no just cause to delay the enforcement or appeal" of the order. Plaintiff timely appealed.

"When a claim has been dismissed for failure to state a cause of action pursuant to section **2--615** of the Code, the critical inquiry on review is 'whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of

---

[1]Count III is not at issue in this appeal.

action upon which relief may be granted.' [Citation.]" First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 218 Ill. 2d 326, 334 (2006). Because the question is one of law, the court's review is de novo. First Midwest Bank, 218 Ill. 2d at 334.

This case is controlled by Hewitt. In Hewitt, the parties cohabited from 1960 to 1975 and had three children. Hewitt, 77 Ill. 2d at 52. During college, Robert Hewitt proclaimed to Victoria Hewitt "that they were husband and wife and would live as such, no formal ceremony being necessary, and that he would 'share his life, his future, his earnings and his property' with her." Hewitt, 77 Ill. 2d at 53. The parties immediately began holding themselves out as husband and wife. Relying on Robert's promises, Victoria devoted her efforts to Robert's professional education and the establishment of his pedodontia practice, even obtaining financial assistance from her parents for this purpose. Victoria worked in Robert's practice and received payroll checks that she deposited into a common fund. Hewitt, 77 Ill. 2d at 53-54. By 1975, Robert had an annual income of $80,000 and had accumulated large amounts of property, owned either jointly with Victoria or separately. Hewitt, 77 Ill. 2d at 54.

Victoria filed for divorce, and her complaint was dismissed by the trial court. Hewitt, 77 Ill. 2d at 52. Victoria filed an amended complaint that sought an equitable one-half share of the parties' assets, based upon theories of implied contract, constructive trust, and unjust enrichment. Hewitt, 77 Ill. 2d at 53. The trial court dismissed the amended complaint, "finding that Illinois law and public policy require such claims to be based on a valid marriage." Hewitt, 77 Ill. 2d at 54. The appellate court reversed. Adopting the reasoning of Marvin v. Marvin, 18 Cal. 3d 660, 557 P.2d 106, 134 Cal. Rptr. 815 (1976), the appellate court held that the amended complaint stated a cause of action on an express oral contract. The appellate court noted that Robert and Victoria had "lived a 'most conventional, respectable and ordinary family life' ***, the 'single flaw' being the lack of a valid

marriage," and it "concluded that [Victoria] should not be denied relief [based] on public policy grounds." Hewitt, 77 Ill. 2d at 54-55.

Our supreme court reversed. The court stated that "[t]he issue of unmarried cohabitants' mutual property rights *** cannot appropriately be characterized solely in terms of contract law, nor is it limited to considerations of equity or fairness as between the parties to such relationships. There are major public policy questions involved in determining whether, under what circumstances, and to what extent it is desirable to accord some type of legal status to claims arising from such relationships. Of substantially greater importance than the rights of the immediate parties is the impact of such recognition upon our society and the institution of marriage." Hewitt, 77 Ill. 2d at 57-58. The supreme court held "that [Victoria's] claims are unenforceable for the reason that they contravene the public policy, implicit in the statutory scheme of the Illinois Marriage and Dissolution of Marriage Act, disfavoring the grant of mutually enforceable property rights to knowingly unmarried cohabitants." Hewitt, 77 Ill. 2d at 66.

In Ayala v. Fox, 206 Ill. App. 3d 538 (1990), this court affirmed the dismissal of a complaint filed by an unmarried cohabitant seeking imposition of a constructive trust over a home in which she lived with the defendant for 10 years. Relying on Hewitt, we held "that plaintiff, as an unmarried cohabitant, is not entitled to an equitable interest in the property" and noted that a contrary holding "would contravene the public policy of this State." Ayala, 206 Ill. App. 3d at 542.

Plaintiff argues that Hewitt's rationale "should no longer be applied as a blanket rule in every set of circumstances involving unmarried cohabitants" and advances three reasons in support of his argument. First, plaintiff argues that "the public policy at the time of Hewitt [sic] decision is susceptible to different but equally compelling interpretations." Second, plaintiff argues that there has been "subsequent legislative activity and changes in social and judicial attitudes." Third,

plaintiff argues that "it is clear that the holding of <u>Hewitt</u> leads to harsh and unjust results tending to cause one of the cohabitants to potentially become dependent on public aid, and thus, cannot be considered good public policy." Similar arguments were advanced and rejected in <u>Hewitt</u>: "The real thrust of plaintiff's argument here is that we should abandon the rule of illegality because of certain changes in societal norms and attitudes. It is urged the social mores have changed radically in recent years, rendering this principle of law archaic. It is said that because there are so many unmarried cohabitants today the courts must confer a legal status on such relationships." <u>Hewitt</u>, 77 Ill. 2d at 60. As the <u>Hewitt</u> court stated, " '[T]hese questions are appropriately within the province of the legislature, and *** if there is to be a change in the law of this State on this matter, it is for the legislature and not the courts to bring about that change.' " <u>Hewitt</u>, 77 Ill. 2d at 66, quoting <u>Mogged v. Mogged</u>, 55 Ill. 2d 221, 225 (1973).

Based on the foregoing, we affirm the order of the circuit court of Du Page County dismissing counts I and II of plaintiff's complaint.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.