**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240695-U

Order filed April 13, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| U.S. BANK NATIONAL TRUST ASSOCIATION, not in its Individual Capacity, but Solely as Owner Trustee for RCF 2 Acquisition Trust, | ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| | ) | Appeal No. 3-24-0695 |
| Plaintiff, | ) | Circuit No. 22-FC-761 |
| | ) | |
| v. | ) ) ) | Honorable Theodore J. Jarz, Judge, Presiding. |
| HOWARD MACHEK, VILLAGE OF PLAINFIELD, UNKNOWN OWNERS, NON-RECORD CLAIMANTS, TOWNES OF AUBURN LAKES CONDOMINIUM ASSOCIATION, LAM QUY NGO, VY HOANG A. NGUYEN, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., nominee for GenHome Mortgage Corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| ----------------------------------------------------------) | ) | |
| CHICAGO TITLE INSURANCE COMPANY, as subrogee of LAM QUY NGO and VY HOANG A. NGUYEN, | ) ) ) ) | |
| | ) | |
| Third Party Plaintiffs-Appellees, | ) | |
| | ) | |

                        v.                              )
                                                        )
SHAGUFTA CHAUDHRY and DERJUAN                           )
INGRAM,                                                 )
                                                        )
            Third Party Defendants-Appellants.          )
_____

            JUSTICE BERTANI delivered the judgment of the court.
            Justices Holdridge and Peterson concurred in the judgment.
_____

                                    **ORDER**

¶ 1        *Held*:   The circuit court properly granted third-party plaintiffs' partial motion for summary
                     judgment on their breach of warranty claim where third-party defendants warranted
                     against a mortgage lien when conveying title through statutory warranty deed. Title
                     company was entitled to recover as subrogee of third-party plaintiffs.

¶ 2        This appeal concerns apportioning liability from a mortgage lien on a condominium unit.

Third-party defendants, Shagufta Chaudhry and Derjuan Ingram, purchased the unit in November

2021 in a sheriff's sale resulting from the foreclosure of a subordinate mortgage. A senior mortgage

encumbered the property. They resold the unit eight months later to third-party plaintiffs, Lam

Quy Ngo and Vy Hoang A. Nguyen, and conveyed title via statutory warranty deed.

¶ 3        Days prior to this second transaction, the holder of the senior mortgage filed a foreclosure

suit, eventually naming Ngo and Nguyen as defendants. Ngo and Nguyen brought a third-party

complaint against Chaudhry and Ingram seeking indemnification by asserting breach of warranty

of good title pursuant to the deed. Ngo and Nguyen eventually moved for partial summary

judgment.

¶ 4        In turn, Chaudhry and Ingram asserted that their retained title company, Chicago Title

Insurance Company (CTIC), bore ultimate liability for the mortgage. They also argued the real

estate contract and deed created questions of fact on whether the property was taken subject to the

senior mortgage. Further, they argued there was no evidence presented that they had offered the

2

warranty deed to induce Ngo and Nguyen to purchase the unit. The circuit court found those arguments unavailing, granted partial summary judgment in favor of Ngo and Nguyen, and held Chaudhry and Ingram responsible for the mortgage. Thereafter, CTIC substituted in as subrogee of Ngo and Nguyen, satisfied the mortgage on their behalf, and obtained a money judgment with attorney fees against Chaudhry and Ingram. On appeal, Chaudhry and Ingram argue summary judgment was improperly granted in favor of Ngo and Nguyen and challenge CTIC's subrogation. For the reasons that follow, we affirm.

¶ 5                                    I. BACKGROUND

¶ 6        The subject property is located at 24835 West Gates Court in Plainfield, Illinois. Two recorded mortgages encumbered the property: a senior mortgage dated March 1, 2018, with Nationstar Mortgage LLC d/b/a Mr. Cooper (Nationstar) in the original sum of $120,100, and a subordinate mortgage with U.S. Bank and Trust Association (U.S. Bank) arising out of a home equity line of credit.

¶ 7        On November 18, 2021, Chaudhry and Ingram purchased the condominium unit at a sheriff's sale for $139,000 following the foreclosure of the subordinate mortgage. U.S. Bank's foreclosure suit on its subordinate mortgage did not name Nationstar as an interested party and did not extinguish the Nationstar mortgage. The sheriff's deed conveying Chaudhry and Ingram title was recorded on July 18, 2022.

¶ 8        On July 20, 2022, Nationstar filed a foreclosure complaint naming Chaudhry and Ingram as defendants. Ngo and Nguyen purchased the property from Chaudhry and Ingram five days later for $262,500. The parties' real estate contract contained the following provision:

              "16. THE DEED: Seller shall convey or cause to be conveyed *** good and
              merchantable title to the Real Estate by recordable Warranty Deed. *** Title when

3

conveyed will be good and merchantable, subject only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they do not interfere with the current use and enjoyment of the Real Estate ***."

¶ 9    Chaudhry and Ingram retained CTIC to perform a title search before conveying title to Ngo and Nguyen via a statutory warranty deed. The deed conveyed the property "SUBJECT TO: *** [c]ovenants, conditions, restrictions and easements apparent or of record." CTIC issued Ngo and Nguyen an owner's policy of title insurance thereafter. While Chaudhry and Ingram reference the title commitment and policy in their briefs asserting neither identified the senior mortgage, those documents are not of record. The only title insurance document of record is the property search which identified the senior mortgage. The record does not reflect whether or not Ngo and Nguyen received the title search.

¶ 10    On November 30, 2022, Nationstar filed an amended foreclosure complaint substituting Ngo and Nguyen as defendants given the transfer of title by Chaudhry and Ingram. Once they became aware of Nationstar's claim, Ngo and Nguyen sent a letter to Chaudhry and Ingram demanding the assumption of their defense of the lawsuit based on the warranty deed. That demand went unheeded.

¶ 11    Subsequently, Ngo and Nguyen filed an answer and third-party complaint naming Chaudhry and Ingram as third-party defendants. Ngo and Nguyen pleaded that they had relied on the warranty deed through its acceptance and advancement of the purchase price for the property, they were unaware of the Nationstar mortgage until being named as defendants in the lawsuit, and based on Nationstar's allegations, Chaudhry and Ingram breached the warranty of title originating from the deed.

4

¶ 12     In answer to the third-party complaint, Chaudhry and Ingram asserted the affirmative defense of indemnification and subordination against CTIC, alleging the title company failed to identify the Nationstar mortgage lien in its commitment and policy and was thus responsible "to correct any defects in title that [it] missed in the initial title search." Ngo and Nguyen successfully moved to strike this affirmative defense. While the circuit court granted Chaudhry and Ingram's motion for leave to file a third-party complaint against CTIC, the record reflects that a complaint was never filed.

¶ 13     On September 6, 2023, Ngo and Nguyen filed a motion for partial summary judgment which sought a declaratory determination on Chaudhry and Ingram's liability for damages resulting from their breach of the warranty deed. It alleged Chaudhry and Ingram failed to disclose the Nationstar mortgage on the multiple listing service advertisement, that they were unaware of the mortgage, and that they relied on the warranty deed in purchasing the property. The motion was also supported by Ngo's affidavit. He averred that shortly before June 20, 2022, he reviewed Chaudhry and Ingram's listing of the property on the multiple listings service which was advertised for $250,000. He and Nguyen personally inspected the condominium. In reliance upon the listing and their inspection, they made an offer to purchase the property for $255,000 by presenting a signed real estate contract. All parties signed the contract after Ngo and Nguyen accepted Chaudhry and Ingram's $262,500 counteroffer. The closing occurred on July 25, 2022, and the warranty deed was delivered on that date. He further averred that he and Nguyen relied upon the warranties set forth and arising under the warranty deed. The motion also incorporated copies of the listing and executed real estate contract. U.S. Bank Trust National Association, as assignee of the Nationstar mortgage, was substituted for Nationstar as plaintiff in the underlying foreclosure lawsuit in November 2023.

¶ 14          In response to the motion for partial summary judgment, Chaudhry and Ingram argued genuine issues of material fact remained concerning whether Ngo and Nguyen purchased the property subject to the mortgage and whether Ngo and Nguyen were induced to purchase by promise of the warranty deed. Chaudhry and Ingram also attached CTIC's property search identifying the Nationstar mortgage.

¶ 15          On May 30, 2024, the court entered a written order granting the motion for partial summary judgment, holding Chaudhry and Ingram jointly and severally liable for the anticipated indebtedness and awarding Ngo and Nguyen attorney fees and costs incurred during the third-party suit. Chaudhry and Ingram's motion to reconsider was denied.

¶ 16          CTIC, in accord with the owner's policy issued to Ngo and Nguyen, subsequently paid $176,644.70 to release the mortgage once efforts to have Chaudhry and Ingram satisfy the lien failed. Meanwhile, the court dismissed the underlying foreclosure complaint on the assigned lender's request by order dated September 9, 2024, but specified the third-party action remained pending.

¶ 17          Once the Nationstar lien was satisfied, Ngo and Nguyen filed a motion for entry of money judgment and moved to substitute CTIC as their subrogee. The court granted both motions on November 12, 2024, and held Chaudhry and Ingram liable in the amount of $189,368.

¶ 18          Chaudhry and Ingram timely appeal.

¶ 19          II. ANALYSIS

¶ 20          Chaudhry and Ingram argue on appeal that several questions of fact should have precluded the entry of partial summary judgment, which found them liable for the Nationstar mortgage. Namely, they assert the Nationstar mortgage was a "restriction" under the terms of the parties' contract and warranty deed, and the property was thus purchased subject to the mortgage, that Ngo

and Nguyen were on record notice of the recorded Nationstar mortgage, and that a question of fact remained regarding whether they induced Ngo and Nguyen to purchase the property with the warranty deed or whether Ngo and Nguyen relied upon the warranty deed completing the purchase. They also contend Ngo and Nguyen did not incur damages to sustain a claim of warranty given that CTIC—not Ngo and Nguyen—satisfied the Nationstar lien. Separately, Chaudhry and Ingram challenge CTIC's ability to subrogate and recover on Ngo and Nguyen's claim based on equitable grounds.

¶ 21       CTIC responds that the deed from Chaudhry and Ingram complies with the Conveyances Act (765 ILCS 5/0.01 *et seq.* (West 2022)) and thereby Chaudhry and Ingram warranted protection from the Nationstar mortgage. It further contends that the mortgage is not a restriction but an encumbrance, that notice of the mortgage has no bearing on Chaudhry and Ingram's liability, and that the record supports Ngo and Nguyen were induced and relied upon the deed's warranties in purchasing the property. It also asserts Chaudhry and Ingram's arguments pertaining to damages and CTIC's entitlement to recover as subrogee are premised upon a misapprehension of its subrogation rights.

¶ 22       The primary focus of Chaudhry and Ingram's appeal is their challenge to the circuit court's grant of partial summary judgment in favor of Ngo and Nguyen. The purpose of summary judgment is not to try a question of fact but to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). Summary judgment should not be granted "where the material facts are disputed, or where, the material facts being undisputed, reasonable

persons might draw different inferences from the undisputed facts." *Adams*, 211 Ill. 2d at 43. While encouraged as an expeditious mechanism to dispose of a lawsuit, summary judgment is a drastic measure. *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. When ruling on a motion for summary judgment, we construe pleadings, depositions, admissions, and affidavits "liberally in favor of the" nonmovant and "strictly against the movant." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. We review a circuit court's summary judgment ruling *de novo*. *Monson*, 2018 IL 122486, ¶ 12. The grant of summary judgment may be affirmed on any basis appearing in the record. *Village of Bartonville v. Lopez*, 2017 IL 120643, ¶ 34.

¶ 23        This appeal also involves the interpretation of the parties' real estate contract and protections conveyed through a statutory warranty deed based upon its language. To the extent this appeal may properly include the interpretation of the contract, the same is subject to *de novo* review. *Sherwood Commons Townhome Owners Ass'n, Inc. v. Dubois*, 2020 IL App (3d) 180561, ¶ 28. Likewise, matters of statutory construction present questions of law and are reviewed *de novo* with the primary objective being to ascertain and give effect to the intent of the legislature. *Board of Education of City of Chicago v. Moore*, 2021 IL 125785, ¶¶ 18, 20. When review is *de novo*, the appellate court performs the same analysis that the circuit court would perform. *Khan v. Fur Keeps Animal Rescue, Inc.*, 2021 IL App (1st) 182694, ¶ 25.

¶ 24        We begin our analysis by noting the deed transferring the property to Ngo and Nguyen is a statutory form warranty deed in compliance with section 9 of the Conveyances Act. 765 ILCS 5/9 (West 2022). In transferring title through such an instrument, a grantor covenants

> "(1) that at the time of the making and delivery of such deed he was the lawful owner of an indefeasible estate in fee simple, in and to the premises therein described, and had good right and full power to convey the same; (2) that the same

8

were then free from all incumbrances; and (3) that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession of such premises, and will defend the title thereto against all persons who may lawfully claim the same. Such covenants shall be obligatory upon any grantor, his heirs and personal representatives, as fully and with like effect as if written at length in such deed."

*Id.*

In *Brown v. Lober*, our supreme court identified the covenants of title incorporated in a warranty deed that conforms to the Act. 75 Ill. 2d 547, 551 (1979). Relevant to this appeal, the court explained that the second subsection reflects the covenant against encumbrances and defined an "incumbrance" as "any right to, or interest in, land which may subsist in a third party to the diminution of the value of the estate, but consistent with the passing of the fee by conveyance." *Id.*; *Village of Buffalo v. Illinois Commerce Comm'n*, 180 Ill. App. 3d 591, 597 (1989) (explaining the term "encumbrance" is identical to "incumbrance"). With this in mind, we turn to Chaudhry and Ingram's arguments.

¶ 25                          A. Classification of the Nationstar Mortgage

¶ 26          Chaudhry and Ingram initially contend that the circuit court erred in granting summary judgment because the instruments effectuating the land transfer created a question of fact as to whether Ngo and Nguyen assumed responsibility for the mortgage when purchasing the property. This argument is premised on shared terms in the real estate contract and deed which provided the property was taken subject to "restrictions" of record. We initially note that Chaudhry and Ingram's reliance upon the terms in the real estate contract is misplaced in that the recitations regarding title exceptions in paragraph 16 of the real estate contract are subject to the doctrine of merger by deed and did not survive the closing. See *Czarobski v. Lata*, 227 Ill. 2d 364, 369-70

9

(2008) ("Under this doctrine, all prior agreements between a buyer and a seller are merged in the deed upon its acceptance," except those that are not fulfilled by the deed); *Mallin v. Good*, 93 Ill. App. 3d 843, 845 (1981). While it is probably a distinction without a difference given both the deed and contract utilize the term "restriction," paragraph 16 of the contract was clearly fulfilled by delivery of the deed. Nonetheless, in an effort to avoid their warranty against encumbrances from the statutory warranty deed, Chaudhry and Ingram argue that the Nationstar mortgage was not an encumbrance but a "restriction."

¶ 27　　　　Chaudhry and Ingram have failed to cite support that constructs a mortgage as a restriction. Black's Law Dictionary defines a property "restriction" as "[a] limitation (esp. in a deed) placed on the use or enjoyment of property." *Restriction*, Black's Law Dictionary (12th ed. 2024). The historical definition of a restriction in this context is a landowner's agreement concerning the use of land which runs with the land in equity. Charles I. Giddings, *Restrictions Upon the Use of Land*, 5 Harv. L. Rev. 274 (1892).

¶ 28　　　　Alternatively, CTIC asserts the mortgage is not a restriction, but a lien and encumbrance violative of the protections afforded by the parties' statutory warranty deed. We agree. Black's Law Dictionary expressly includes mortgages and liens as examples of encumbrances in defining that term. *Encumbrance*, Black's Law Dictionary (12th ed. 2024). It provides that an encumbrance is "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage." *Id.* Illinois courts have drawn distinctions between liens and encumbrances, narrowly construing a lien as "a legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied." (Internal quotation marks omitted.) *Rhone v. First American Title Insurance Co.*, 401 Ill. App. 3d 802, 808 (2010). A mortgage falls within this definition as a "consensual lien on real property owned by another

10

party." *OneWest Bank FSB v. Cielak*, 2016 IL App (3d) 150224, ¶ 20. While the term encumbrance is broader and without a "technical, legal meaning," it encompasses "liens such as mortgages." *Monti v. Tangora*, 99 Ill. App. 3d 575, 580-81 (1981) (adopting and expanding on the definition of encumbrance as stated in *Brown*).

¶ 29    In short, the Nationstar mortgage lien is an encumbrance rather than a restriction. Chaudhry and Ingram conveyed title in the form of a statutory warranty deed, which implies certain covenants of title. *Brown*, 75 Ill. 2d at 551. By doing so, Chaudhry and Ingram as grantors assured Ngo and Nguyen that the condominium unit was "then free from all incumbrances," which includes the Nationstar mortgage at issue, and warranted the quiet and peaceable possession of the property. 765 ILCS 5/9 (West 2022).

¶ 30                                    B. Notice of the Nationstar Mortgage

¶ 31    Chaudhry and Ingram next argue that issues of fact remain as to whether Ngo and Nguyen had actual or constructive notice of the mortgage when purchasing the property based on the mortgage being recorded and reflected in CTIC's title search. CTIC responds that the question of notice is immaterial to Chaudhry and Ingram's warranty liability. CTIC's position is correct.

¶ 32    The covenants of warranty established by the statutory warranty deed would not be extinguished even if Ngo and Nguyen had actual or constructive notice of the Nationstar mortgage. As this court held over a century ago, "[m]ere knowledge on the part of the covenantee of facts that will constitute a breach of a covenant will not prevent a recovery for such breach." *Ibbetson v. Knodle*, 201 Ill. App. 373, 376 (1916).

¶ 33    This is not the first time case law has addressed the applicability of this principle to a property encumbered by a mortgage lien. In *Midfirst Bank v. Abney*, for instance, the Second District discussed this principle under substantially similar circumstances. 365 Ill. App. 3d 636,

11

647 (2006). There, two mortgage liens encumbered a property, and the junior mortgage lien was foreclosed upon. *Id.* at 638. The individual who purchased the property at the foreclosure sale resold the property to a prior owner and transferred title via warranty deed although the senior mortgage lien had not been released. *Id.* at 638-39. Once a foreclosure action on the senior lien was filed, the prior owner brought a countercomplaint for breach of warranty against the individual who had resold him the property which prevailed on summary judgment. *Id.* at 640, 642.

¶ 34        In affirming, the appellate court held that the prior owner's actual knowledge of the senior mortgage lien when repurchasing the property did " 'not relieve the vendor of his liability upon the covenants contained in his deed. Such knowledge on the part of the purchaser does not operate as a release or discharge of a covenant.' " *Id.* at 644 (quoting *Sondag v. Keefe*, 251 Ill. App. 378, 380 (1929)). Therefore, any actual or constructive knowledge Ngo and Nguyen may have obtained based on the recording of the Nationstar mortgage or CTIC's title search cannot support questions of fact absolving Chaudhry and Ingram from their warranty of title.

¶ 35                    C. Warranty as Inducement and Reliance to Purchase

¶ 36        Chaudhry and Ingram next argue that the issue of whether Ngo and Nguyen were induced to purchase the unit based on the warranty deed remains disputed. They agree that during summary judgment, Ngo and Nguyen argued reliance upon the warranty led them to believe there was no existing mortgage on the property. However, Chaudhry and Ingram argue this contention was adequately disputed by their response to the partial motion for summary judgment. To support that a question of fact remains, Chaudhry and Ingram cite *Chicago Title Insurance Co. v. Bass*, which held that to sustain a breach of warranty action, "the purchaser must prove that the grantor gave the warranty as an inducement to make the purchase, and the purchaser actually relied upon that warranty." 2015 IL App (1st) 140948, ¶ 18. A purchaser is not required to show reliance was

12

reasonable. *Id.* CTIC responds that the record contains adequate evidence of Chaudhry and Ingram's inducement and Ngo and Nguyen's reliance on the warranty of title.

¶ 37     Although *Bass* involved transfer of title by a warranty deed, it is readily distinguishable and more accurately described as an instance where the subrogor conspired with a delinquent tax purchaser to purchase real estate at a steep discount by subterfuge. In *Bass*, the owner of a commercial property contracted to sell commercial real estate to prospective buyers for $140,000. *Id.* ¶ 5. After the sale fell through, the buyers sued the owner for specific performance and filed a "Memorandum of Sale" and *lis pendens* creating a cloud on the owner's title. *Id.* Meanwhile a tax purchaser purchased the property's delinquent real estate taxes and filed a tax deed proceeding against the owner. *Id.* ¶ 6. The buyers redeemed the delinquent taxes resulting in the tax purchaser's dismissal of the tax deed proceeding. *Id.* The buyers subsequently approached the tax purchaser, and they entered into an oral agreement to acquire the property via the dismissed tax deed proceedings. *Id.* ¶ 7. As consequence, the tax purchaser filed a motion to expunge the redemption and vacate the dismissal of the tax deed proceedings without providing notice to the owner. *Id.* The motion was granted, and the tax purchaser obtained title via a tax deed and conveyed the property by warranty deed to the buyers for $65,000. *Id.* A title company issued an owners' policy to the buyers. *Id.* ¶ 8. After learning of the tax deed litigation, the owner filed and was successful in her 2-1401 petition to vacate the issuance of the tax deed based upon her lack of notice. *Id.* ¶ 9; 735 ILCS 5/2-1401 (West 2006). The title company, as subrogee of the buyers, filed suit against the tax purchaser alleging breach of warranty deed and unjust enrichment. *Bass*, 2015 IL App (1st) 140948, ¶ 11. The trial court granted summary judgment in favor of the tax purchaser. *Id.*

13

¶ 38        The appellate court affirmed, first noting that the title company, as subrogee, could only enforce those rights that would have been available to the buyers as subrogors. *Id.* ¶ 14. It found that the trial court must have concluded that the buyers were not *bona fide* purchasers in the underlying proceedings in order to vacate the tax deed. *Id.* ¶¶ 16-17. It thus framed the issue as follows: "whether the [buyers] now have a claim against [the tax purchaser] for breach of the warranty deed where the trial court determined that they were not *bona fide* purchasers *** . " *Id.* ¶ 18. Given that the buyers approached the tax purchaser resulting in their oral agreement to reinstate the tax proceedings and lay claim to the property, the appellate court concluded that the tax purchaser "did not use the warranty to induce" the buyers to purchase. *Id.* ¶ 19. Therefore, the buyers, and thus the title company, could not maintain a breach of warranty claim against the tax purchaser. *Id.*

¶ 39        Nothing in the record before us suggests that the sale and purchase here was anything other than an arm's length transaction which bears no resemblance to the scheme undertaken in *Bass*.

¶ 40        The only evidence before this court relevant to inducement and reliance is Ngo's uncontested affidavit. "Uncontested, sworn affidavits submitted in support of a motion for summary judgment must be accepted as true for purposes of deciding the motion, contrary assertions in an opponent's pleadings notwithstanding." *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 576 (2000). Ngo's affidavit established that he and Nguyen made a purchase offer after viewing the multiple listing service advertisement, which did not note the Nationstar mortgage. They presented their offer via the real estate contract which required the transfer of title through warranty deed. Chaudhry and Ingram presented a counteroffer under the same contract terms which was accepted by Ngo and Nguyen. Ngo's affidavit further

established that title was conveyed via a warranty deed as required by the contract and that he and Nguyen relied on the warranties arising under the deed.

¶ 41   Chaudhry and Ingram argue that the absence of evidence creates a question of fact relating to inducement and reliance. They posit that the multiple listing service advertisement did not indicate the property would be transferred via warranty deed and that Ngo and Nguyen could have neither been induced nor relied upon the advertisement. This position ignores the real estate contract entered into by the parties and fails to refute Ngo's affidavit relating to the reliance upon the contract and resultant deed. The limited record indicates the warranty deed was necessary to complete the real estate transaction, Ngo and Nguyen relied upon the deed, and Chaudhry and Ingram did not introduce rebuttal evidence challenging this point. As such, we conclude that there is no genuine issue of material fact concerning the inducement and reliance regarding the manner of conveyance.

¶ 42                                    D. Subrogation

¶ 43   In their final argument, Chaudhry and Ingram assert that Ngo and Nguyen did not technically suffer damages because CTIC paid for the release of the mortgage and that CTIC should be barred from recovering as subrogee due to equitable considerations. The three requirements to subrogate are:

> "(1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for the loss, under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt of the third party." *Abney*, 365 Ill. App. 3d at 647 (2006).

Chaudhry and Ingram argue questions of fact arise from CTIC's culpability in failing to disclose the Nationstar mortgage interest in either the commitment or title policy itself, when it knew of its

existence as evidenced by the title search. In support, Chaudhry and Ingram explain that the thrust of title insurance "is to protect a transferee of real estate from the possibilities of loss through defects which may cloud title." *First National Bank of Northbrook, N.A. v. Stewart Title Guaranty Co.*, 279 Ill. App. 3d 188, 192 (1996). However, there is no evidence of record that a title insurance policy was issued in favor of Chaudhry and Ingram. They are not "transferee[s]" which their cited authority indicates title insurance is designed to protect. We note Chaudhry and Ingram did not file a breach of contract or other claim against CTIC although they were granted leave to do so.

¶ 44    Our supreme court has concluded that title insurers, in issuing commitments and policies, are not in the business of providing information that is intended to be relied upon. *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 341 (2006). Rather, in Illinois, a title commitment sets forth terms for issuing a policy of title insurance and the policy of title insurance insures "against the risk of undiscovered defects, liens, and encumbrances." *Id.* As such, in *First Midwest Bank*, the financial institution could not seek recovery against the title company for its failure to list a restrictive covenant in its commitment because the negligent misrepresentation exception to the *Moorman* doctrine did not apply. *Id.* at 329, 341; *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 89 (1982). Relying on the supreme court's pronouncement that no duty arises from issuing title commitments and policy of title insurance in this context, CTIC asserts any purported failure to identify the Nationstar mortgage in the commitment cannot be utilized to defeat its claim as subrogee of Ngo and Nguyen.

¶ 45    Several issues plague Chaudhry and Ingram's equitable argument. There is no complaint supporting a cause of action alleging CTIC is liable to Chaudhry and Ingram in tort (distinguishing this matter from *First Midwest Bank*) or contract. While the *First Midwest Bank* court explained that "[t]he scope of a title insurer's liability is properly defined by contract" and Chaudhry and

16

Ingram sought leave to file a third-party complaint against CTIC for breach of contract, no such complaint was filed. *First Midwest Bank*, 218 Ill. 2d at 341 (2006). The record does not contain the title commitment, nor does it include any contract between CTIC and Chaudhry and Ingram. Our supreme court has issued resolute guidance that a title insurer is not under a duty to supply information in its commitment or policy of title insurance. *Id.* Considering the foregoing, the court did not err in entering judgment against Chaudhry and Ingram and CTIC, as the appropriate subrogee of Ngo and Nguyen, was entitled to recover on their behalf.

¶ 46                                    III. CONCLUSION

¶ 47        The judgment of the circuit court of Will County is affirmed.

¶ 48        Affirmed.