No. 3--05--0643

_____

Filed October 6, 2006.

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| R.O.W. WINDOW COMPANY f/k/a | ) | Appeal from the Circuit Court |
| ROCKDALE SALES & TRIM, INC., its | ) | of the 12th Judicial Circuit, |
| predecessor-in-interest, | ) | Will County, Illinois |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | No. 03-L-601 |
| v. | ) | |
| | ) | |
| ALLMETAL, INC., | ) | Honorable |
| | ) | Amy M. Bertani-Tomczak, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE CARTER delivered the Opinion of the Court:

_____
_____

The plaintiff, R.O.W. Window Company, brought suit against the defendant, Allmetal,

Inc., for breach of implied warranty of fitness for a particular purpose and breach of implied

warranty of merchantability. The trial court found that the implied warranties had been

disclaimed and granted the defendant's motion to dismiss the suit with prejudice. The

plaintiff appeals and argues: (1) that the disclaimer was invalid because it was not

conspicuous, (2) that the disclaimer was ineffective because it was not part of the sales

contract, and (3) that the employee making the purchase orders did not have authority to

waive the implied warranties. We affirm.

FACTS

The facts as determined from the pleadings and other documents filed in the trial court are as follows. Plaintiff is a corporation that manufactures insulated glass windows to be used in new construction. Defendant is a corporation that sells corner keys and spacers to be used in the manufacture of insulated glass. From 1994 through 1998, plaintiff purchased corner keys and spacers from defendant to be used in plaintiff's insulated glass windows. Those windows were sold to plaintiff's customers with a ten year warranty. During the warranty period, the glass in the windows failed at an abnormally high rate due to a problem with the corner keys and spacers. The plaintiff incurred losses as a result of having to replace the failed pieces of insulated glass, loss of profits from the sales of those replacement units, and costs incurred for the payment of an installer to replace the units.

In October of 2003, plaintiff brought suit against defendant for breach of implied warranty of fitness for a particular purpose and breach of implied warranty of merchantability. The plaintiff sought more than $1 million in damages.

In April of 2005, the defendant filed a motion to dismiss the complaint with prejudice pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2004)) alleging that it had disclaimed the implied warranties that the plaintiff had sought to recover upon. Attached to the motion were numerous supporting documents. Two of which were copies of a portion of the defendant's yearly product catalog from 1989 and 1994.[1] The portion of the catalogs that was attached was the section entitled "Terms &

---

[1]A copy of the disclaimer from the 1989 and 1994 product catalogs are attached to this order as Attachment #1 and Attachment #2.

Conditions of Sale".  Along with other conditions of sale, that section contained the following disclaimer:

"THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  PRODUCTS ARE SOLD 'AS IS' AND ON THE CONDITION THAT THE PURCHASERS SHALL MAKE THEIR OWN TESTS TO DETERMINE THE MERCHANTABILITY OF SUCH PRODUCTS AND THEIR FITNESS FOR ANY PARTICULAR PURPOSE.  THE LIABILITY OF ALLMETAL, INC. FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES FOR INJURY TO A PROPERTY FOR ANY REASON OR FOR ANY OTHER LOSS RESULTING FROM A PRODUCT DEFECT OR FAILURE SHALL BE LIMITED TO THE PURCHASE PRICE OF THE PRODUCT."

The disclaimer was the only text on the page to be listed in all capital letters, other than the company name at the top of the page.  The print size for the disclaimer was not noticeably larger or smaller than the print size used for all of the other text on the page.  In the first copy of the catalog section, the disclaimer was listed in the bottom left corner of the page in a separate text box surrounded by a square border.  In the second copy of the catalog section, the disclaimer was listed in the bottom right corner of the page in a separate shaded text box.  Although in both copies of the catalog, the disclaimer was set off

3

in its own text box, the box did not contain a heading.  The catalog itself was over 200 pages long with a table of contents at the front.  The first section of the table of contents entitled "General Information" contained the subsection, "Terms and Conditions" (noted above).

Also attached to the defendant's motion to dismiss was a copy of the defendant's standard invoice.[2]  Almost all of the invoice was printed in all capital letters.  In the center of the invoice, the following disclaimer was listed:

> "THE SELLER HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  PRODUCTS ARE SOLD 'AS IS' AND ON THE CONDITION THAT THE PURCHASERS SHALL MAKE THEIR OWN TESTS TO DETERMINE THE MERCHANTABILITY OF SUCH PRODUCTS AND THEIR FITNESS FOR ANY PARTICULAR PURPOSE. THE LIABILITY OF ALLMETAL, INC. FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES FOR INJURY TO PROPERTY OR ANY PERSON OR FOR ANY OTHER LOSS RESULTING FROM A PRODUCT DEFECT OR FAILURE SHALL BE LIMITED TO THE PURCHASE PRICE OF THE PRODUCT."

---

[2]A copy of the standard invoice is attached to this order as Attachment #3.

There was no heading above the disclaimer and it was listed in fine print, which was somewhat smaller than the print size used on the rest of the invoice. Like most of the text on the invoice, the disclaimer was printed in all capital letters. There was a small area of open space both above and below the disclaimer.

The defendant's motion also had attached to it the affidavit of Phillip Collin, the president of defendant corporation. In the affidavit, Collin averred that since 1989, the above noted disclaimer had been provided to defendant's customers in the yearly product catalog. Collin also averred that every invoice for products purchased since 1989 by the plaintiff had contained the above noted disclaimer.

The plaintiff filed a written response to the motion to dismiss. In support of its response, the plaintiff attached the affidavit of Glen Brooks, the president of plaintiff corporation. Brooks averred as follows. Plaintiff located and purchased defendant's corner keys and spacers based on the recommendation of the designer of plaintiff's window system, not based upon the defendant's product catalog. The purchase orders were produced from plaintiff's computer and were not based on the defendant's catalog. As former sales manager and president, Brooks was not aware of any disclaimer or limitation of warranty in defendant's catalog or invoices. Chuck Dzarnowski, the employee who had ordered the corner keys and spacers until his retirement in 2000, did not have the authority to waive any warranty for items that he had purchased. Only William Gebhardt, the former general manager and current vice president of the corporation, had the authority to do so. The defect in the corner keys and spacers was not discoverable upon reasonable inspection upon delivery of defendant's products. The windows failed months or years after they were manufactured and installed in new construction when the spacer slipped off of

5

the corner key in thousands of windows.

After reviewing the court filings and hearing the arguments of the parties, the trial court granted the defendant's motion to dismiss. This appeal followed.

ANALYSIS

The plaintiff argues that the trial court erred in granting the motion to dismiss. Our review of this issue is de novo. Van Meter v. Darien Park Dist., 207 Ill. 2d 359, 367-368, 799 N.E.2d 273, 278 (2003) (dismissal pursuant to section 2-619 is reviewed de novo). In conducting such a review, we must construe all of the pleadings and supporting documents in the light most favorable to the non-moving party. Van Meter, 207 Ill. 2d at 367-68, 799 N.E. 2d at 278.

In support of its argument, the plaintiff first asserts that the disclaimer was invalid because it was not conspicuous. As the plaintiff notes, section 2-316 of the Uniform Commercial Code (810 ILCS 5/2-316(2)) requires that all written disclaimers of the implied warranties of merchantability or fitness must be conspicuous. The purpose of this rule is to protect the buyer from surprise. Bell Fuels, Inc. v. Lockheed Electronics Co., Inc., 130 Ill. App. 3d 940, 944-945, 474 N.E. 2d 1312, 1316-1317 (1985). The UCC defines "conspicuous" as follows.

"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to

6

have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. ***" 810 ILCS 5/1-201(10).

The determination of whether a particular term or clause is conspicuous is to be made by the court. 810 ILCS 5/1-201(10). The court should make that determination by asking if attention can reasonably by expected to be called to the term or clause. Bell Fuels, Inc., 130 Ill. App. 3d at 946, 474 N.E. 2d at 1317.

Applying the above legal principles to facts of the present case, we find that the written disclaimers contained in the product catalog and in the invoices are conspicuous. In the catalog, the written disclaimer was contained in a section entitled, "Terms and Conditions of Sale". That section was listed in the table of contents at the front of the catalog. As for the disclaimer itself, it was printed in all capital letters and was set off in a separate text box that was either surrounded by a border or was shaded. The language used very specifically disclaimed the implied warranties in question. In the invoice, although smaller, fine print was used, the disclaimer was again listed in all capital letters. The plaintiff tries to minimize the significance of this by arguing that almost all of the text on the invoice was in capital letters. However, the disclaimer was essentially the only textual paragraph on the invoice, was set off by open space above and below it, and was located in the center of the page. As with the catalog, the language used in the invoice very specifically disclaimed the implied warranties in question. While it may be true that the defendant could have made the disclaimers more conspicuous, that is not the test before this Court. The disclaimers were presented in a manner reasonably sufficient to draw

7

attention to them. See Bell Fuels, Inc., 130 Ill. App. 3d at 946, 474 N.E. 2d at 1317. We are not persuaded by the cases cited by the plaintiff to the contrary. They simply do not address the factual situation that we are confronted with in the present case. Nor do we accept the plaintiff's invitation to find that a disclaimer written in fine print can never be conspicuous. See Clements Farms, Inc. v. Ben Fish & Son, 120 Idaho 185, 189, 814 P. 2d 917, 921 (1991) (fine print of itself does not render a disclaimer inconspicuous); Sierra Diesel Injection Service, Inc. v. Burroughs Corp., Inc., 890 F. 2d 108, 114 (9th Cir. 1989) (whether a disclaimer is conspicuous is not simply a matter of measuring the type size or looking at the placement of the disclaimer within the contract). In reaching this conclusion, we are mindful that the transactions before us are between two business entities. The courts are less reluctant to hold businessmen to the terms of contracts to which they have entered than consumers dealing with skilled corporate sellers. Bowers Mfg. Co., Inc. v. Chicago Mach. Tool Co., 117 Ill. App. 3d 226, 233, 453 N.E.2d 61, 66 (1983).

We turn now to the plaintiff's second assertion--that it was not bound by the disclaimers because the disclaimers were not a part of the sales contract. As the plaintiff suggests, it is generally true that a disclaimer sent with goods when they are shipped is insufficient. Gideon Service Division v. Dunham-Bush, Inc., 80 Ill. App. 3d 633, 637-638, 400 N.E. 2d 89, 92 (1980)). However, an implied warranty may be excluded by course of dealing. 810 ILCS 5/2-316(3)(c) (West 2004). A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct. 810 ILCS 5/1-205(1) (West 2004). A course of dealing between parties gives particular meaning to and supplements or qualifies the terms of the

8

agreement.  810 ILCS 5/1-205(3) (West 2004).

The record before us in the present case indicates that the plaintiff was a customer of the defendant for several years.  The plaintiff and the defendant had business dealings going back to 1989.  During that period, all of the invoices that the defendant sent to the plaintiff had a conspicuous disclaimer of implied warranties printed on them in the center of the page.  In addition, the product catalog that the defendant sent out to its customers each year, also contained a conspicuous disclaimer of the implied warranties.

This is not a case such as <u>Gideon Service Division v. Dunham Bush Inc.</u>, cited by the plaintiff, where the buyer and seller were involved in a single transaction.  See <u>Gideon Service Division</u>, 80 Ill. App. 3d at 634-635, 400 N.E. 2d at 89-90.  Rather, in the present case, there was a course of dealing that took place over several years.  That course of dealing supplements the terms of the parties' agreement and establishes that the exclusion of implied warranties was a part of the bargain.  See <u>Capitol Converting Equipment, Inc. v. LEP Transport, Inc.</u>, 965 F.2d 391, 396 (7th Cir. 1992) (course of dealing established that liability limitation contained on transportation company's invoice was part of agreement); <u>Tolmie Farms, Inc. v. J.R. Simplot Co., Inc.</u>, 124 Idaho 607, 612, 862 P.2d 299, 304 (1993) (course of dealing between parties over several years--during which time seller of farm chemical had sent buyer numerous invoices containing warranty disclaimers and had each year posted label containing disclaimer on distribution tank at plaintiff's farm--established that seller had effectively disclaimed implied warranties of merchantability and fitness); <u>J. D. Pavlak, Ltd. v. William Davies Co., Inc.</u>, 40 Ill. App.3d 1, 4, 351 N.E.2d 243, 246 (1976) (contract terms and prior dealings of parties were sufficient to exclude any implied warranty that meat would not have a fat content of more than 15%).  Contrary to the plaintiff's

9

argument, the affidavit of Brooks denying knowledge of the disclaimers, standing alone, is not sufficient to create a material issue of fact regarding whether a course of dealing as to an exclusion of implied warranties existed between the defendant and the plaintiff. See Capitol Converting Equipment, Inc., 965 F.2d at 395 (affidavit of company president denying knowledge of liability limitation, standing alone, was not sufficient to create a genuine factual dispute over whether a course of dealing as to a liability limitation existed between the two companies).

Having determined that the disclaimers were conspicuous and that they were made a part of the parties' agreement by the course of dealing, we must consider the plaintiff's third and final assertion--that its purchasing employee did not have authority to waive the implied warranties.

An agent's authority to bind a principal may be actual or apparent. Progress Printing Corp. v. Jane Byrne Political Committee, 235 Ill. App. 3d 292, 307, 601 N.E. 2d 1055, 1066 (1992). Actual authority is authority that is derived from a specific grant of authorization to perform a particular act (express) or that is inherent in the agent's position (implied). Progress Printing Corp., 235 Ill. App. 3d at 308, 601 N.E. 2d at 1066. Apparent authority is that authority which a reasonably prudent person, in view of the principal's conduct, would naturally suppose the agent to possess. Progress Printing Corp., 235 Ill. App. 3d at 308, 601 N.E. 2d at 1066. Apparent authority arises where a principal creates, through words or conduct, the reasonable impression that the putative agent has been granted authority to perform certain acts. Progress Printing Corp., 235 Ill. App. 3d at 308, 601 N.E. 2d at 1066. The principal, having created the appearance of authority, is estopped to deny it to the detriment of a third party. Progress Printing Corp., 235 Ill. App. 3d at 308, 601 N.E. 2d at

10

1066. In the present case, the record before us shows that the plaintiff's purchasing employee had ordered spacers and corner keys from the defendant over the course of several years. The plaintiff accepted and used those products, paid out on the invoices, and allowed the purchasing employee to order more products without objection and without ever communicating any limitations to the defendant. The facts establish that the purchasing employee had, at the very least, apparent authority to enter into transactions with the defendant. See Progress Printing Corp., 235 Ill. App. 3d at 308, 601 N.E. 2d at 1066. Thus, we conclude that the plaintiff's third assertion is without merit.

For the foregoing reasons, we affirm the order of the Circuit Court of Will County dismissing the plaintiff's suit with prejudice.

Affirmed.

SLATER and O'BRIEN J. J. concurring.

11