No. 3–09–0501

Filed March 17, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY a/s/o Sandrock Enterprises, Inc., an Illinois Corporation, d/b/a Sandrock Farms, and GARY L. SANDROCK, | ) ) ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Whiteside County, Illinois |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | No. 08-L-40 |
| BIRKEY'S FARM STORE, INC., d/b/a Birkey's Construction Equipment Company, an Illinois Corporation, and CNH AMERICA, LLC, a Foreign Business Corporation, | ) ) ) ) ) ) | Honorable John L. Hauptman, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

Plaintiff, Westfield Insurance Company (Westfield), filed a fourth amended complaint against

defendants Birkey's Farm Store Inc. (Birkey's), and CNH America, LLC (CNH), under a theory of

subrogation, seeking damages related to a tractor fire. Defendants moved to dismiss seven of the

eight counts of the fourth amended complaint for various reasons. The trial court granted the

motions to dismiss and denied Westfield's request for leave to file a fifth amended complaint.

Westfield appeals, arguing that: (1) the trial court erred in dismissing Westfield's tort causes of

action against each defendant based upon a finding that the causes of action were barred by the

economic loss doctrine; (2) the trial court erred in dismissing Westfield's breach of warranty claims

against Birkey's based upon a finding that the warranties were effectively disclaimed by a valid warranty disclaimer; and (3) the trial court erred in denying Westfield's request for leave to file a fifth amended complaint. We affirm.

FACTS

In January of 2006, Sandrock Enterprises, Inc., an Illinois corporation doing business as Sandrock Farms, sought to purchase a Case IH farm tractor for its farming operations. Sandrock Farms negotiated a purchase through Birkey's since Birkey's was a certified dealer of Case IH tractors. Originally, Sandrock Farms agreed to purchase from Birkey's a Case IH Model STX 500 4WD tractor that did not include an auto steer system. However, some time after the original negotiations, Birkey's contacted Sandrock Farms and indicated that it was not able to find a tractor with the exact specifications that Sandrock Farms sought. Birkey's told Sandrock Farms further that it was able to find a Case IH Model STX 500 4WD tractor with the same or similar specifications but with extra equipment in the form of an auto steer system. In February of 2006, Sandrock Farms agreed to purchase that tractor instead and negotiated a price with Birkey's of $10,795 for the auto steer system. Sandrock Farms took delivery of the tractor from Birkey's with the auto steer system already installed. The total purchase price of the tractor with the auto steer system was $205,000. The tractor was manufactured by CNH.

Less than a year later, in October of 2006, the tractor caught on fire during normal agricultural use and was extensively damaged. Sandrock filed a claim for the damage with its insurer, Westfield, and Westfield paid out on the claim. Westfield later brought suit under a theory of subrogation against both Birkey's and CNH. In its suit, Westfield alleged both tort and contract causes of action.

In November of 2007, Westfield filed its five-count original complaint in this case in Kane County naming Birkey's and Case IH Agricultural Equipment, Inc. (Case IH), as defendants. The original complaint alleged the following causes of action: count I, strict products liability against Case IH; count II, negligence against Case IH; count III, negligence against Birkey's; count IV, breach of contract against Birkey's; and count V, breach of warranty of merchantability against Birkey's. With regard to its tort causes of action against CNH (counts I and II), Westfield merely alleged that the tractor ignited, "resulting in the fire which communicated to other portions of the [t]ractor, causing severe and extensive damage all to the ultimate loss and damage of Westfield." Westfield made essentially that same allegation with regard to its tort cause of action against Birkey's (count III) but also added the allegation that "Sandrock's property sustained fire and fire related damage, including loss of business income."

Attached to the original complaint (and to most of the later-filed amended complaints) was a copy of the two-page written purchase order between Birkey's and Sandrock Farms. The purchase order provided that on February 15, 2006, Sandrock Farms purchased a new Case IH STX 500 4WD tractor with an auto steer system from Birkey's for $205,000. About three-fourths of the way down on the first page of the purchase order, in small print with all capital letters, was the following text: "SELLER AND MANUFACTURER MAKE NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED (INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS) EXCEPT AS PROVIDED ON THE REVERSE SIDE." Just below that text, in small print under a heading entitled, "NOTICE TO PURCHASER," was additional text which, among other things, instructed the purchaser to read the contract before he or she signed it. The first page of the purchase order was signed at the bottom by someone on behalf

3

of Birkey's (signature unreadable) and by Gary Sandrock of Sandrock Farms. Above the signature line in small print was the typewritten notation, "[i]t is understood that this is the entire agreement between the parties."

On the second page (or possibly the reverse side) of the purchase order, in approximately the middle of the page, was the heading, "WARRANTY," in bold, all-capital letters, which were somewhat larger than the letters in the other text of the document. Specifically with regard to new equipment, the warranty section stated that, "[a]ny warranties provided by the Dealer on any NEW EQUIPMENT set forth on the reverse side hereof shall be given to Purchaser by separate statement, the receipt whereof is hereby acknowledged by Purchaser." No signatures appear on the second page of the purchase order.

In February of 2008, CNH filed its answer and affirmative defenses in response to the original complaint. In its pleading, CNH alleged, among other things, that it had been incorrectly sued under the wrong name, Case IH, and that CNH was its appropriate designation for the purposes of the instant action. Later that same month, the Kane County trial court ordered Westfield to file a first amended complaint to correct the name of the defendant from Case IH to CNH. In addition, the Kane County trial court granted Birkey's leave to file a motion to dismiss count IV of the complaint, alleging that Westfield failed to state a cause of action for breach of contract.

In March of 2008, Westfield filed its first amended complaint in Kane County, as it had been directed to do by the Kane County trial court, to correct the name of the codefendant from Case IH to CNH.

In April of 2008, Birkey's filed a motion to transfer the case to Whiteside County based on forum non conveniens. Later that same month, the Kane County trial court entered an order, which,

4

among other things, granted Birkey's motion to dismiss count IV of the first amended complaint, with leave to replead, and granted Westfield leave to file a second amended complaint.

In May of 2008, Westfield filed its second amended complaint in Kane County. The six-count second amended complaint alleged the following causes of action: count I, strict products liability against CNH; count II, negligence against CNH; count III, negligence against Birkey's; count IV, strict products liability against Birkey's; count V, breach of warranty of merchantability against Birkey's; and count VI, breach of warranty of fitness for a particular purpose against Birkey's. As for both tort causes of action against CNH (counts I and II) and the strict products liability cause of action against Birkey's (count IV), Westfield merely alleged that the tractor ignited, "resulting in the fire which communicated to other portions of the [t]ractor, causing severe and extensive damage all to the ultimate loss and damage of Westfield." Westfield made essentially that same allegation with regard to its negligence cause of action against Birkey's as well (count III) but also added the allegation that "Sandrock's property sustained fire and fire related damage, including loss of business income."

Later that same month, Birkey's filed a motion to dismiss count IV of the second amended complaint pursuant to section 2-621(b) of the Code of Civil Procedure (Code) (735 ILCS 5/2-621(b) (West 2008)), alleging that dismissal of count IV was mandated because Birkey's was not the manufacturer of the tractor in question and because the manufacturer was named in the complaint, had already been served, and had filed an answer in the proceedings. Attached to the motion was the certifying affidavit of Dennis Johnson, the manager of Birkey's. In the affidavit, Johnson attested that Birkey's was not the manufacturer of the tractor in question, that Birkey's did not exercise control over the design or manufacture of the tractor, that Birkey's did not provide any instructions or

5

warnings to the manufacturer regarding any alleged defects in the tractor, and that Birkey's had no knowledge of any alleged defects in the tractor.

In July of 2008, the Kane County trial court entered an order granting Birkey's motion to transfer the case to Whiteside County. The Kane County trial court also gave CNH leave to file a motion to dismiss counts I and II of the second amended complaint, alleging that the counts were barred by the economic loss doctrine. The Kane County trial court noted in its order that it was not making any ruling on Birkey's pending motion to dismiss. The case was docketed in Whiteside County later that month. During the following month, Birkey's filed a motion to dismiss count III of the second amended complaint, alleging that the claim was barred by the economic loss doctrine (failed to sufficiently allege a claim for negligence).

In October of 2008, prior to a hearing on the pending motions to dismiss and without leave of court, Westfield filed a third amended complaint. The six-count third amended complaint alleged the same causes of action against each of the defendants as were alleged in the second amended complaint. As to the tort causes of action (counts I through IV), Westfield retained the language noted above about the damage caused by the fire but also added an additional paragraph, stating that "the [t]ractor fire communicated to other property, including but not limited to extra equipment added to the [t]ractor after its manufacture, all to the ultimate loss and damage of Westfield." Attached to the third amended complaint was a copy of the purchase order and a copy of a dealer's invoice showing that the auto steer system was added to the tractor at a cost of $10,795. The following month, Westfield moved for, and was given, the requisite leave to file its third amended complaint. After being given leave, Westfield properly refiled the third amended complaint in November of 2008.

In December of 2008, Birkey's filed a combined motion to dismiss counts III through VI of

6

the third amended complaint. In the first portion of its motion, Birkey's moved pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2008)) to dismiss the tort causes of action filed against it in the third amended complaint (counts III and IV), alleging that Westfield had failed to sufficiently state a cause of action in tort due to the application of the economic loss doctrine to the tort causes of action. In the second portion of its motion, Birkey's made an additional motion to dismiss count IV of the third amended complaint based upon the application of section 2-621(b) of the Code. And finally, in the third part of its motion, Birkey's moved pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2008)) to dismiss the breach of warranty causes of action filed against it in the third amended complaint (counts V and VI), alleging that the disclaimer of warranties contained in the purchase order served as other affirmative matter, which completely barred Westfield's warranty claims. Attached to Birkey's motion to dismiss, among other things, was a copy of the affidavit of Dennis Johnson, which had been previously filed relative to the section 2-621(b) argument. That same month, CNH filed a motion of its own pursuant to section 2-615 of the Code to dismiss the tort causes of action that were filed against it in the third amended complaint (counts I and II), alleging that Westfield had failed to sufficiently state a cause of action in tort due to the application of the economic loss doctrine. Westfield filed responses opposing the motions to dismiss and also filed a motion to strike Johnson's affidavit as being improper. Defendants filed responsive pleadings. In sum, all of the pending matters relative to the third amended complaint were fully, thoroughly, and extensively briefed in the trial court before the trial court heard oral arguments on the matter.

A hearing was held on the pending motions relative to the third amended complaint in January of 2009. After hearing the oral arguments of the attorneys, the trial court granted both defendants' motions to dismiss. The trial court entered an order: (1) finding that the product bargained for was

7

a fully integrated tractor complete with the auto steer system; (2) dismissing counts I and II against CNH without prejudice pursuant to section 2-615 of the Code and the economic loss doctrine; (3) dismissing count III of the third amended complaint against Birkey's without prejudice pursuant to section 2-615 of the Code and the economic loss doctrine; (4) dismissing count IV of the third amended complaint against Birkey's without prejudice pursuant to section 2-621 of the Code; (5) dismissing counts V and VI of the third amended complaint against Birkey's with prejudice pursuant to section 2-619 of the Code; and (6) granting Westfield leave within a specified time period to file a fourth amended complaint to amend counts I through IV.

In March of 2009, Westfield filed its fourth amended complaint. The eight-count fourth amended complaint alleged the following causes of action: count I, strict products liability against CNH; count II, negligence against CNH; count III, negligence against Birkey's; count IV, strict products liability against Birkey's; count V, breach of warranty of merchantability against Birkey's (repled for purposes of appeal, with the heading changed to "Breach of Express Warranty"); count VI, breach of warranty of fitness for a particular purpose against Birkey's (repled for purposes of appeal); count VII, breach of express warranty (the manufacturer's warranty given by CNH) against Birkeys; and count VIII, breach of express warranty (the manufacturer's warranty given by CNH) against CNH. Westfield made several changes in the fourth amended complaint relevant to the tort causes of action. First, Westfield added several paragraphs to the introductory portion of the fourth amended complaint to further establish the negotiations that led up to Sandrock Farms' purchase of a tractor with an auto steer system. Westfield alleged that: (1) in January or February of 2006, Sandrock farms had originally bargained for a Case IH Model STX 500 4WD tractor that did not include an auto steer system, a negotiation which Westfield referred to as the original agreement; (2) Sandrock Farms was informed by Birkey's that a model matching its exact specifications could not

be found, but a model with similar specifications that also contained an auto steer system was available; (3) Birkey's continued to negotiate with Sandrock Farms regarding the cost of the auto steer system; and (4) based on information and belief, the auto steer system was added to the tractor after its original manufacture. And second, Westfield added additional language to the allegations set forth in each tort cause of action (counts I through IV) to more specifically describe the damage that was caused by the defective product or particular defendant's negligence. In summary, Westfield alleged that: (1) the tractor ignited, resulting in fire which communicated to other portions of the tractor and caused severe and extensive damage all to the ultimate loss and damage of Westfield; (2) the tractor fire communicated to the auto steer system, all to the ultimate loss and damage of Westfield; (3) the tractor fire communicated to and damaged and/or destroyed other property, including but not limited to the clothing worn by Sandrock employees; (4) as a result of the fire, Sandrock and its employees lost the value of certain other property, including but not limited to spent fire extinguishers and equipment, which were consumed in their attempts to extinguish or contain the fire; (5) as a result of the fire, Sandrock sustained damages to other property and other damages including but not limited to a loss of business income and lost employee time; and (6) as a result of the fire, Sandrock employees sustained personal injuries in their attempts to extinguish the fire. None of the Sandrock employees who allegedly were injured or suffered damages as a result of the fire were specifically named in the fourth amended complaint or added as parties to the litigation.

Attached in support of the fourth amended complaint were various documents. The first document was the affidavit of Gary L. Sandrock. In his affidavit, Sandrock attested that: (1) he was the owner of Sandrock Farms; (2) in approximately January or February of 2006, Sandrock Farms originally bargained with Birkey's for a Case IH Model STX 500 4WD tractor that did not include an auto steer system; (3) in the days or weeks following the original bargain, Birkey's contacted him

or another person at Sandrock Farms and indicated that it was unable to find a tractor with the exact specifications and at the price originally agreed; (4) at about the same time, Birkey's told Sandrock Farms that it was able to find a Case IH Model STX 500 4WD tractor with the same or similar specifications but with extra equipment in the form of an auto steer system; (5) Birkey's continued to negotiate with Sandrock Farms over the additional cost of the auto steer system; (6) as a result of the tractor fire, various articles of clothing worn by Sandrock employees were damaged or destroyed; (7) as a result of the tractor fire, Sandrock and its employees lost the value of other certain property, including but not limited to spent fire extinguishers and other equipment, which were consumed in attempts to extinguish the fire; (8) as a result of the tractor fire, Sandrock lost business income and employee time; and (9) as a result of the fire, Sandrock employees sustained personal injuries in their attempts to extinguish the fire. The second document attached to the fourth amended complaint was a copy of the two-page purchase order. The third document attached to the fourth amended complaint was a copy of the dealer invoice showing that the auto steer system was added at a cost of $10,795. The fourth document attached to the fourth amended complaint was a series of repair orders showing that Birkey's had done various repair work on the tractor after it had been purchased by Sandrock Farms and before the fire. And finally, the fifth document attached to the fourth amended complaint was a copy of the manufacturer's (CNH's) warranty on the tractor.

Later that same month (March of 2009), Birkey's filed a combined motion to dismiss counts III through VI of the fourth amended complaint. In the first portion of its motion, Birkey's moved pursuant to section 2-615 of the Code to dismiss the tort causes of action filed against it in the fourth amended complaint (counts III and IV), alleging that Westfield had failed to sufficiently state a cause of action in tort due to the application of the economic loss doctrine. Alternatively, if the trial court found that some of the losses alleged by Westfield in the fourth amended complaint were not

10

economic losses, Birkey's asserted that dismissal of the tort causes of action was still proper as to those losses pursuant to section 2-619 of the Code because Westfield and Gary Sandrock (the only other named plaintiff) did not have standing to bring claims on behalf of Sandrock Farms' employees and because any such personal injury claims were time barred. Birkey's asked that the trial court to dismiss the tort claims against it with prejudice. In the second portion of its motion, Birkey's made an additional motion to dismiss count IV of the fourth amended complaint with prejudice based upon the application of section 2-621(b) of the Code. In the third part of its motion, Birkey's moved pursuant to section 2-619(a)(9) of the Code to dismiss with prejudice the breach of warranty causes of action filed against it in the fourth amended complaint (counts V, VI, and VII), alleging that the disclaimer of warranties contained in the purchase order served as other affirmative matter, which completely barred Westfield's warranty claims. Attached to Birkey's motion to dismiss, were various supporting documents.

On the same date that Birkey's motion to dismiss was filed, Westfield filed a request for leave to file a fifth amended complaint. In the request for leave, Westfield indicated that it had communicated with the attorneys for Birkey's and for CNH and was notified that Birkey's and CNH would be objecting to the fourth amended complaint. Westfield stated further that after the fourth amended complaint was filed, it had learned through conversations with fact witnesses at Sandrock Farms that the tractor fire destroyed additional "other property" in the form of various tractor parts, such as air filters, oil filters, and engine and other fluids. Westfield requested that it be allowed to file a fifth amended complaint so that it could add an additional paragraph to identify damages in the form of "other property" to the various tractor parts that were destroyed in the fire. At some point in the proceedings, a copy of the proposed fifth amended complaint was made part of the trial court record for the trial court to consider in deciding whether to grant Westfield's request for leave to amend.

11

In addition, on the same date as the other two filings, CNH filed a motion pursuant to section 2-619(a)(9) of the Code to dismiss the tort causes of action that were filed against it in the fourth amended complaint (counts I and II), alleging that Westfield's tort claims were barred by the economic loss doctrine. CNH asked the trial court to dismiss counts I and II with prejudice and to enter sanctions against Westfield for filing frivolous pleadings. As did Birkey's in its motions to dismiss, CNH asserted that the losses claimed by Westfield were either economic losses or were losses for which Westfield had no ability to recover, either due to lack of standing or because the claims were time barred. CNH attached various supporting documents to its motion to dismiss.

Westfield filed responses opposing the motions to dismiss, and defendants filed responsive pleadings opposing Westfield's request for leave to file its fifth amended complaint. In sum, all of the pending matters relative to the fourth amended complaint and the request for leave to file the fifth amended complaint were fully, thoroughly, and extensively briefed in the trial court before the trial court heard oral arguments on the matter.

In May of 2009, a hearing was held on the pending motions relative to the fourth amended complaint, the request for sanctions, and the request for leave to file the fifth amended complaint. After hearing the oral arguments of the attorneys, the trial court entered an order that: (1) granted CNH's motion to dismiss with prejudice counts I and II of the fourth amended complaint; (2) granted Birkey's motion to dismiss with prejudice counts III through VII of the fourth amended complaint; (3) denied Westfield's request for leave to file a fifth amended complaint; and (4) made a Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)) finding that there was no just reason to delay enforcement or appeal of the trial court's orders.

On the record, the trial court was very specific and clear as to the reasons for its rulings. The trial court stated:

"With regard to CNH's motion to dismiss Counts I and II of the Plaintiff's Fourth Amended Complaint, the Court rules as follows. No. 1, Plaintiff seeks recovery of an economic loss under a tort theory; therefore, the Mormon [sic] Doctrine applies. Although there are three exceptions to the application of this Doctrine, only one is applicable in this case, namely where Plaintiffs sustained damage, i.e., personal injury or property damage to other property resulting from sudden or dangerous occurrence.

No. 3 [sic], the 'products bargained for' approach is the law in Illinois for determining what constitutes other property.

No. 4, the product in this case is the fully integrated tractor complete with auto steer component. Damages to this product is what the Plaintiff seeks to recover in tort. In addition, loss of employee time and loss of business income are economic losses and, therefore, not other property. Damage to employee clothing and to a spent fire extinguisher incidental [sic] to the loss of the tractor and is, therefore, not other property. Accordingly, Plaintiffs' recovery in tort is barred by the Mormon [sic] Doctrine. Furthermore, the Plaintiff lacks standing to recover damage to Sandrock employees' clothing, personal injuries, spent fire extinguishers, loss of business income and lost employee time.

Recovery for personal injuries–finally recovery for personal injuries, I'm finding time barred.

CNH's motion to dismiss pursuant to 619 is granted. Counts I and II are dismissed with prejudice.

Birkey's motion to dismiss Counts III, IV, V, VI, and VII of Plaintiff's Fourth

13

Amended Complaint, the Court finds as follows. All eight [sic] of the above findings are incorporated into these findings.

Defendant is not the manufacturer of the tractor. Defendant is a distributor. CNH is the manufacturer, and Counts have been alleged against that Defendant who has fully participated in this litigation. Plaintiff has alleged no facts which would make 735 ILCS 5/2-621 inapplicable.

As to the breach of warranty counts, the UCC obviously applies. Plaintiffs' theory that the Defendant is bound by a manufacturer's warranty is without merit, particularly in light of the express disclaimer found on the purchase order between the Plaintiff and Birkey's. Birkey's motion to dismiss is granted. Counts III, IV, V, VI and VII are dismissed with prejudice.

CNH's motion for sanctions pursuant to Rule 137 denied.

Plaintiffs' motion for leave to file Fifth Amended Complaint denied."

As a result of the trial court's ruling, the only count of the fourth amended complaint remaining was count VIII, Westfield's cause of action against CNH for breach of express warranty (the manufacturer's warranty). As indicated above, despite the existence of that remaining claim, the trial court entered an order pursuant to Supreme Court Rule 304(a) that there was no just reason to delay enforcement or appeal of its rulings. That order was entered without objection from any of the parties. Westfield subsequently filed the instant appeal.

ANALYSIS

On appeal, Westfield argues that the trial court erred in dismissing its tort causes of action against each defendant, counts I through IV of the fourth amended complaint, based upon a finding that the causes of action were barred by the economic loss doctrine. Specifically, Westfield asserts

14

that its fourth amended complaint sufficiently alleged and established that the fire caused damage to "other property" in addition to the tractor itself, so as to prevent the application of the economic loss doctrine to its tort causes of action. Westfield contends that one such example of "other property" that was damaged in the fire was the auto steer system on the tractor and contends further that there were additional items of "other property" that were damaged as well.

Defendants argue that the trial court's ruling was proper and should be affirmed.[1] Defendants assert that the fourth amended complaint failed to remove this case from the application of the economic loss doctrine in three respects: (1) the auto steer system was part of the tractor itself and was not "other property" for purposes of the property-damage exception; (2) certain other losses were incidental to the damage to the tractor itself and also cannot be considered other property for the purposes of the exception; and (3) even if the losses suffered qualified as personal injury or damage to "other property" so as to invoke the exception to the doctrine, Westfield cannot assert those losses because it has no standing to do so or because the losses are time barred.

When a trial court rules upon a motion to dismiss a complaint either for failure to state a cause of action (735 ILCS 5/2-615 (West 2008)) or because the claims raised in the complaint are barred by other affirmative matter that avoids the legal effect of or defeats the claim (735 ILCS 5/2-619(a)(9) (West 2008)), it must interpret all of the pleadings and the supporting documents in the light most favorable to the nonmoving party. In re Chicago Flood Litigation, 176 Ill. 2d 179, 189, 680 N.E.2d 265, 270 (1997). Such motions to dismiss should be granted only if the plaintiff can

---

[1]Defendants are represented by separate attorneys on appeal and have filed separate appellate briefs. However, to the extent that their arguments are similar, we will simply refer to those arguments as being made by defendants.

prove no set of facts that would support a cause of action. In re Chicago Flood Litigation, 176 Ill. 2d at 189, 680 N.E.2d at 270. A trial court's grant of a motion to dismiss pursuant to either section 2-615 or section 2-619 of the Code is subject to a de novo standard of review on appeal. In re Chicago Flood Litigation, 176 Ill. 2d at 189, 680 N.E.2d at 270.

Pursuant to the economic loss doctrine, a products liability plaintiff cannot recover for solely economic loss under the tort theories of strict liability, negligence, or innocent misrepresentation. Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69, 91, 435 N.E.2d 443, 453 (1982); Trans States Airlines v. Pratt & Whitney Canada, Inc., 177 Ill. 2d 21, 29, 682 N.E.2d 45, 49 (1997); First Midwest Bank, N.A. v. Stewart Title Guaranty Co., 218 Ill. 2d 326, 337, 843 N.E.2d 327, 333 (2006); Loman v. Freeman, 229 Ill. 2d 104, 109-10, 890 N.E.2d 446, 451 (2008). Economic loss has been defined as damages for inadequate value; the cost of repair or replacement of the defective product; the consequent loss of profits, without any claim of personal injury or damage to other property; or the diminution in value of the product because of its inferior quality. Mars, Inc. v. Heritage Builders of Effingham, Inc., 327 Ill. App. 3d 346, 350-51, 763 N.E.2d 428, 434 (2002). The economic loss doctrine was established because the courts recognized that tort law afforded a remedy for losses occasioned by personal injuries or property damage and was not intended to compensate parties for monetary losses suffered as a result of duties which were owed to them simply as a result of a contract, losses related to a purchaser's disappointed expectations due to deterioration, internal breakdown or nonaccidental causes. See In re Chicago Flood Litigation, 176 Ill. 2d at 200, 680 N.E.2d at 275; Tyler v. Gibbons, 368 Ill. App. 3d 126, 129, 857 N.E.2d 885, 888 (2006). Rather, contract law and the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 et seq. (West 2008)) offer the appropriate remedy for economic losses occasioned by diminished commercial expectations not coupled with injury to person or property. In re Chicago Flood Litigation, 176 Ill.

16

2d at 200, 680 N.E.2d at 275. Thus, "the economic-loss [doctrine] is founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover damages caused by a breach of contract." Mars, Inc., 327 Ill. App. 3d at 351, 763 N.E.2d at 434.

An exception to the economic loss doctrine applies, however, where the plaintiff has sustained personal injury or property damage resulting from a sudden or dangerous occurrence. Moorman Manufacturing Co., 91 Ill. 2d at 86, 435 N.E.2d at 450; Trans States Airlines, 177 Ill. 2d at 26-27, 682 N.E.2d at 48; First Midwest Bank, N.A., 218 Ill. 2d at 337, 843 N.E.2d at 333; Loman, 229 Ill. 2d at 110, 890 N.E.2d at 451-52. Under such circumstances, the economic loss doctrine does not bar recovery and a plaintiff may recover in tort for solely economic losses. Mars, Inc., 327 Ill. App. 3d at 351, 763 N.E.2d at 434. However, for the exception to apply based upon property damage, the property damaged must be property other than the allegedly defective product itself. Trans States Airlines, 177 Ill. 2d at 41-42, 682 N.E.2d at 54-55. Thus, a defective product that damages only itself cannot be the subject of a suit for damages in tort. Mars, Inc., 327 Ill. App. 3d at 354, 763 N.E.2d at 436.

A question often arises, as in the present case, as to whether property that was damaged is the defective product itself or "other property" for purposes of the exception to the economic loss doctrine. In determining what constitutes "other property" for the purposes of the property-damage exception, the supreme court has adopted the "product bargained for" approach. See Trans States Airlines, 177 Ill. 2d at 49, 682 N.E.2d at 58. Under that approach, the supreme court has recognized that a product and one of its component parts may constitute two separate products for purposes of the property-damage exception. See Trans States Airlines, 177 Ill. 2d at 51, 682 N.E.2d at 59. However, if the parties bargained for a fully integrated product, the product and the component part

17

constitute one product and the economic loss doctrine bars any recovery in tort for the damage to that product. See Trans States Airlines, 177 Ill. 2d at 50-51, 682 N.E.2d at 58. Moreover, the economic loss doctrine also bars tort recovery for any type of damage that one would reasonably expect as a direct consequence of, or incidental to, the failure of the defective product. See Trans States Airlines, 177 Ill. 2d at 51, 682 N.E.2d at 58-59. The starting point in the "product bargained for" analysis is with the contract between the parties. Trans States Airlines, 177 Ill. 2d at 50, 682 N.E.2d at 58.

In the present case, in the fourth amended complaint, Westfield alleged that the auto steer system was a separate product from the tractor itself, in an attempt to invoke the property-damage exception to the economic loss doctrine. Westfield also attached a copy of the dealer invoice to the complaint showing that a separate price of $10,795 was negotiated for the auto steer system at a time after the original negotiations took place. However, viewing that evidence in the light most favorable to Westfield, that evidence still does not establish that the auto steer system was separate or other property for purposes of the property-damage exception. That is especially true in light of the fact that the tractor was placed into the stream of commerce as one integrated unit with the auto steer system intact when it was delivered to Sandrock Farms. There is no indication from the pleadings that the auto steer system was added at a later time after Sandrock Farms took delivery of the tractor. Thus, we must conclude, as the trial court did, that the auto steer system was not other property for purposes of the property-damage exception. Nor can we find that Westfield's allegation of additional property or injury–a fire extinguisher, equipment, employee clothing, loss of employee time, and employee injury–was sufficient to trigger the application of the property-damage (or personal injury) exception. Westfield has no standing to assert any claims of personal injury or property damage on behalf of Sandrock employees. Furthermore, Westfield's allegations of loss of employee time and

18

productivity losses are solely economic losses to which the economic loss doctrine clearly applies. See Mars, Inc., 327 Ill. App. 3d at 350-51, 763 N.E.2d at 434. And finally, the remaining allegations of other property–a fire extinguisher and some equipment–are the exact types of property one would expect to be damaged as a direct or incidental consequence of the tractor fire and are, therefore, also barred by the economic loss doctrine. See Trans States Airlines, 177 Ill. 2d at 51, 682 N.E.2d at 58-59.

Thus, we are left with the conclusion that when all of the pleadings and supporting documents in the instant case are viewed in the light most favorable to Westfield, Westfield still can prove no set of facts that would support a cause of action in tort. The trial court, therefore, properly dismissed the tort claims raised by Westfield against each defendant in its fourth amended complaint (counts I through IV). See Chicago Flood Litigation, 176 Ill. 2d at 189, 680 N.E.2d at 270. Having reached that conclusion, we need not address Westfield's alternative assertion that a strict products liability cause of action could be brought against Birkey's, even though Birkey's was not the manufacturer, because Birkey's had serviced the tractor numerous times and would have been aware of the defective condition of the tractor. As previously discussed, a cause of action for strict products liability, as well as any other causes of action in tort, would be barred by the economic loss doctrine.

As its second contention on appeal, Westfield argues that the trial court erred in dismissing its breach of implied and express warranty claims against Birkey's (counts V through VII of the fourth amended complaint). First, as to its implied warranty claims, Westfield asserts that Birkey's disclaimer of warranties was invalid and unenforceable because it was not signed by Sandrock Farms and because it was not in compliance with UCC requirements for such disclaimers in that it was inconspicuous, ambiguous, misleading, and unconscionable. Westfield asserts further that even if the disclaimer was valid, it had no effect on certain other warranties and representations that were made

19

to Sandrock Farms by Birkey's. And second, as to its express warranty claim (the manufacturer's warranty given by CNH), Westfield asserts that when the pleadings are viewed in the light most favorable to it, the documents attached and made part of the complaint establish that Birkey's was a signatory of and party to the manufacturer's warranty as the dealer of the product, and thus, was bound by that warranty as well.

Birkey's argues that the trial court ruling was proper and should be affirmed. Birkey's asserts that the trial court correctly found that its warranty disclaimer was valid and enforceable and was sufficient to disclaim any implied or express warranty. Birkey's asserts further that the pleadings and other supporting documents viewed in the light most favorable to Westfield show that Birkey's disclaimer was in full compliance with the requirements of the UCC; that no other warranties or representations were made to Sandrock Farms by Birkey's, as indicated on the purchase order which reflects that it is the entire agreement between the parties; and that Birkey's was not bound by any express warranty given by the manufacturer (CNH).

As noted above, a trial court's ruling upon a section 2-619 motion to dismiss is subject to a de novo standard of review on appeal. In re Chicago Flood Litigation, 176 Ill. 2d at 189, 680 N.E.2d at 270. In deciding such a motion, the trial court must interpret all of the pleadings and the supporting documents in the light most favorable to the nonmoving party. In re Chicago Flood Litigation, 176 Ill. 2d at 189, 680 N.E.2d at 270.

"[S]ection 2-316 of the Uniform Commercial Code (UCC) (810 ILCS 5/2-316(2) (West 2004)) requires that all written disclaimers of the implied warranties of merchantability or fitness must be conspicuous." R.O.W. Window Co. v. Allmetal, Inc., 367 Ill. App. 3d 749, 753, 856 N.E.2d 55, 59 (2006). The rule's purpose is to protect a buyer from surprise. R.O.W. Window Co., 367 Ill. App. 3d at 753, 856 N.E.2d at 59. The UCC defines "conspicuous" as follows:

"A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color." 810 ILCS 5/1-201(10) (West 2004).

The determination of whether a warranty disclaimer is conspicuous is to be made by a court. 810 ILCS 5/1-201(10) (West 2008); See R.O.W. Window Co., 367 Ill. App. 3d at 753, 856 N.E.2d at 59. The question before the court is not whether the disclaimer at issue could have been made more conspicuous but, rather, whether the disclaimer at issue was presented in a manner reasonably sufficient to draw attention to it. See R.O.W. Window Co., 367 Ill. App. 3d at 754, 856 N.E.2d at 60.

The warranty disclaimer in the instant case satisfies that requirement and was sufficient, therefore, to effectively disclaim both implied and express warranties. The disclaimer was prominently placed on the front of the purchase order and was set off under a bold line in capital letters and below the heading, "NOTICE TO PURCHASER," and used language that specifically referenced the terms "implied warranties of merchantability and fitness" and "express" warranties. The language used in the disclaimer was clear, direct, and to the point, and contrary to Westfield's suggestion, was in no way ambiguous or misleading. Although, admittedly, the disclaimer was printed in small print, print size alone is not dispositive of this issue. See R.O.W. Window Co., 367 Ill. App. 3d at 754, 856 N.E.2d at 60. This was a business deal between sophisticated entities and there is nothing about the circumstances of this case as pled that would suggest that the disclaimer was unconscionable. See R.O.W. Window Co., 367 Ill. App. 3d at 754, 856 N.E.2d at 60. Even in

21

the light most favorable to Westfield, we cannot find that the disclaimer was invalid or unenforceable or that there is any indication that Birkey's made any additional promises or representations to Sandbrook Farms in the nature of a warranty on the tractor. The purchase order for the tractor in question, which was attached to and made a part of the complaint by Westfield, indicates as much where it specifically provides that it constitutes the entire agreement between the parties. Furthermore, even if we were to conclude that Birkey's was somehow bound by the manufacturer's express warranty, a finding which is not supported by the allegations raised in the pleadings or in the documents attached, we would still have to rule in Birkey's favor because, viewing the allegations in the light most favorable to Westfield, we would still have to find that the express manufacturer's warranty was effectively disclaimed.

As its final contention on appeal, Westfield argues that the trial court erred in denying its request for leave to file a fifth amended complaint. Westfield asserts that leave to amend should have been granted because the fifth amended complaint would have cured all of the deficiencies that were asserted by defendants as to the fourth amended complaint. Westfield asks that we reverse the trial court's ruling and remand this case with instructions to the trial court to grant Westfield's request for leave to file the fifth amended complaint.

Defendants argue that the trial court's denial of Westfield's motion for leave to amend was proper and should be affirmed. Defendants assert that leave to amend was correctly denied because the proposed amendments would not have cured the defects contained in the fourth amended complaint, because Westfield had ample time in previous pleadings to correct any deficiencies and because allowing Westfield to amend its complaint, yet again, would be highly prejudicial to defendants.

In Illinois, courts are encouraged to freely and liberally allow amendments to pleadings. See

22

Lee v. Chicago Transit Authority, 152 Ill. 2d 432, 467, 605 N.E.2d 493, 508 (1992); 735 ILCS 5/2-616(a) (West 2008) (pleadings may be amended at any time before final judgment on just and reasonable terms). A party's right to amend pleadings, however, is not absolute or unlimited. Lee, 152 Ill. 2d at 467, 605 N.E.2d at 508. The decision whether to grant leave to amend a pleading rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. Lee, 152 Ill. 2d at 467, 605 N.E.2d at 508. Some of the factors to be considered in determining whether to allow a motion to amend pleadings are whether the amendment would cure a defect in the pleadings, whether the other party would be prejudiced or surprised by the proposed amendment, whether the proposed amendment is timely, and whether there were previous opportunities to amend the pleadings. Lee, 152 Ill. 2d at 467-68, 605 N.E.2d at 508.

Having reviewed the record in the present case, we agree with defendants that the trial court properly denied Westfield's request for leave to file a fifth amended complaint. Contrary to Westfield's assertion on appeal, the proposed amendments would not have cured the deficiencies in the pleadings. Adding Gary Sandrock and Sandrock Farms as parties to the case still would not have given Westfield standing to maintain a tort action for personal injury to any other Sandrock Farms employee or to maintain an action for damage to that employee's clothing or property. See American Drug Stores, Inc. v. AT & T Technologies, Inc., 222 Ill. App. 3d 153, 156, 583 N.E.2d 694, 696-97 (1991) (a cause of action must be based upon an injury suffered by a plaintiff, not upon an alleged injury suffered by one who is not a party to the action); Washington Courte Condominium Association-Four v. Washington-Golf Corp., 150 Ill. App. 3d 681, 687, 501 N.E.2d 1290, 1294 (1986) (alleged personal injury to minor son possibly resulting from defective windows and doors was irrelevant to action before the court since minor son was never made a party to the action). Nor does the allegation of additional items of property that were allegedly located in the tractor and damaged

23

in the fire remove this case from the application of the economic loss doctrine. All of the items alleged were either part of the tractor itself or were items that were incidentally damaged as a result of the fire. See Trans States Airlines, 177 Ill. 2d at 51, 682 N.E.2d at 58-59; Washington Courte Condominium Association-Four, 150 Ill. App. 3d at 686-87, 501 N.E.2d at 1293-94 (alleged property damage to insulation, walls, ceilings, floors, and electrical outlets was incidental to defective window and doors and was consequential economic loss, which was barred from tort recovery by the economic loss doctrine); Chicago Heights Venture v. Dynamit Nobel of America, Inc., 782 F.2d 723, 729-30 (7th Cir. 1986) (alleged property damage to ceilings and walls of apartments and damage to bricks on apartment building, which resulted when allegedly defective roofing material dislodged two separate times, was incidental damage to which economic loss doctrine applied); Miller v. United States Steel Corp., 902 F.2d 573, 575-76 (7th Cir. 1990) (existence of property damage caused by defective steel panels, consisting of water damage to walls of office building, was incidental property damage and did not take commercial dispute outside of the economic loss doctrine, under Wisconsin law). Thus, we find that trial court did not commit an abuse of discretion in denying Westfield's request for leave to file a fifth amended complaint.

For the foregoing reasons, we affirm the judgment of the circuit court of Whiteside County.

Affirmed.

MCDADE and O'BRIEN, J. J. concurring.

24